UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**EDWARD McCLASKEY**
    Plaintiff

**v.**                                                        **No. 1:08CV-00032-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by M. Gail Wilson. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 15 and 18, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on April 18, 2007, by administrative law judge (ALJ) Roger Reynolds. In support of his decision denying Title II and Title XVI benefits, Judge Reynolds entered the following numbered findings:

    1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

    2. The claimant has not engaged in substantial gainful activity since January 3, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

    3. The claimant has the following severe impairments: mildly severe left leg pain and weakness, status post left femur fracture; cervical strain; blindness right eye; dementia secondary to a closed head injury; post traumatic stress disorder; depression; GERD and osteoarthritis of the left knee (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity for light work with the following additional limitations; he can lift, carry, push or pull up to twenty pounds on an occasional basis, ten pounds on a frequent basis, but stand/walk only 2 hours in an 8-hour workday; sit 6 hours in an 8-hour workday. He requires a sit/stand option at one hour intervals. He cannot climb ropes, ladders, or scaffolds but may occasionally climb stairs or ramps. He cannot push, pull or operate foot pedals using the left foot. Kneeling and crawling are ruled out but he can occasionally bend, stoop, or crouch. He cannot do work requiring acute vision, binocular vision, or depth perception. He cannot work around concentrated dust, gases, fumes, chemicals, temperature extremes, excess humidity or industrial hazards. Mentally, he requires entry level simple job duties following 1-2 step procedures, with no frequently changes in work routines, and no requirement for detailed or complex problem solving, independent planning or the setting of goals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 22, 1959 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2002, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 26-32).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's

decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

    2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

    3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Background history and proceedings

In 2004, after the plaintiff filed applications for benefits in June of 2002, and before the Commissioner's final decision herein in April of 2007, the plaintiff moved from Florida to Kentucky to be with his mother (AR, p. 792). Accordingly, many of the medical records appearing in the administrative record in this case are from Florida.

On May 23, 1993, the plaintiff was involved an a motor vehicle accident in which he reported loss of consciousness for a few minutes, was hospitalized for 25 days, was placed on a ventilator and feeding tube, and injured his left leg (AR, p. 198). However, he eventually returned to work and, by 1998, was making $29,000 a year (AR, p. 117).

5

On June 17, 2002, the plaintiff filed applications for disability benefits alleging that he became disabled on January 3, 2002, when he stopped working and started attending college for eventual training as a nurse (AR, p. 759).

On September 6, 2002, the plaintiff experienced another motor vehicle accident in which he was rear-ended and suffered cervical strain / whiplash and a closed-head injury (AR, pp. 536, 738, and 744). He reported that he lost consciousness for about a minute and was treated for back pain, memory, and speech problems (AR, pp. 571, 791, and 792). The resulting lawsuit was settled for $10,000 plus medical expenses (AR, p. 745). This post-application accident appears to form the primary basis of the plaintiff's disability claim due to impaired memory and concentration.

On June 23, 2005, ALJ Reynolds denied the plaintiff's claims (AR, pp. 51-57). Thereafter, the matter was remanded by the Appeals Council. A copy of the Order of remand is appended to the plaintiff's fact and law summary (Docket Entry No. 15).

On April 18, 2007, Judge Reynold's issued his second denial decision, which subsequently became the Commissioner's final decision herein when the Appeals Council declined the plaintiff's request for further review.

**Discussion**

This case was denied at the fifth and final step of the sequential evaluation process based upon testimony at the administrative hearing of a vocational expert (VE). The VE testified that an individual with the limitations identified in ALJ's Finding No. 5 would retain the ability to perform a significant number of jobs in the national economy (AR, pp. 765-766). Unless the plaintiff points the court to probative evidence in the administrative record that he suffers from an additional vocationally-significant limitation not contemplated by the foregoing vocational testimony,

the court should affirm the ALJ's decision upon the strength of the vocational testimony. See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987). The plaintiff has failed to identify any such evidence. Therefore, we shall recommend an affirmance of the Commissioner's final decision. The plaintiff's specific contentions shall be considered in the order they were presented in his fact and law summary.

First, the plaintiff argues that "the ALJ erred in finding that Mr. McClaskey's allegations concerning his limitations [i.e., severe memory and concentration issues due to closed-head injury] were not fully credible" (Docket Entry No. 15, p. 3). The Commissioner's credibility determination is an open-ended multi-factors approach. See 20 C.F.R. §§ 404.1529 and 416.929 ("How we evaluate symptoms, including pain") and Social Security Ruling (SSR) 96-7p. Absent a compelling reason, a reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*, 307 F.3d 377, 379 (6th Cir., 2001). The ALJ and not a reviewing court is to make credibility findings regarding a claimant's subjective complaints. *Murphy v. Secretary*, 801 F.2d 182, 184 (6th Cir., 1986). An ALJ's opportunity to observe the appearance and demeanor of a claimant during the hearing is invaluable and will not "lightly be discarded" by a reviewing court. *Villarreal v. Secretary*, 818 F.2d 461, 463 (6th Cir., 1987). The notion that special deference is owed to a credibility finding by a trier of fact is deeply embedded in our laws. The opportunity to observe the demeanor of a witness, to evaluate what is said in light of how it is said, and to consider how it fits in with the rest of the evidence gathered is invaluable and should be give proper consideration. *Beavers v. Secretary*, 577 F.2d 383, 387 (6th Cir., 1978).

In this case, the plaintiff alleges disabling limitations due to a closed-head injury that occurred in September of 2002, <u>after</u> he had filed his application for disability benefits in June of 2002. At least one medical source in this case, Gary Maryman, Psy.D., opined that the plaintiff is "malingering" and that "[t]here was no reliable and credible evidence ... that could be used as basis for opinions on functional capacity" (AR, pp. 598 and 600). The magistrate judge concludes that the plaintiff has failed to show that the ALJ acted outside his province or abused his discretion in finding the plaintiff's complaints of disabling mental limitations to be credible only to the extent of the ALJ's residual functional capacity (RFC) Finding No. 5, and the court should not disturb those findings.

The plaintiff's remaining contentions pertain to the ALJ's assessment of his mental restrictions in light of the medical source opinions in the administrative record. There are several such opinions bearing on the issue of what the plaintiff can still do despite his impairments, which we shall presently summarize.

From October of 2002, through February of 2004, the plaintiff was treated by clinical neuropsychologist, H. Edward Fouty, Ph.D., of Daytona Beach, Florida. On March 12, 2003, Dr. Fouty completed the Mental RFC questionnaire. Among other things, Dr. Fouty opined that the plaintiff would have "no useful ability to function" and "unable to meet competitive standards" in several functional areas that are pertinent to an ability to engage in work or work-like activities and that his condition would necessitate absences from work of more than four days per month (AR, pp. 543-547).

On October 11, 2002, the plaintiff was examined, at the request of the Commissioner, by licensed clinical psychologist Michael West, Psy.D. Dr. West's narrative report is at AR, pp. 320-322.

On February 7, 2003, in light of Dr. West's assessment and the record as a whole, the non-examining state agency program psychologist, Susan Conley, Ph.D., completed the Mental RFC assessment, finding that the plaintiff is no more than "moderately" limited in any functional area (AR, pp. 358-359).

On or about May 2, 2005, the plaintiff was examined, at the request of the Commissioner, by Gary Maryman, Psy.D., Somerset, Kentucky. Dr. Maryman's narrative report is at AR, pp. 593-599. Dr. Maryman opined that, although the plaintiff "report[ed] two motor vehicle accidents that could have possibly accounted for some of his impairments, at the same time it was believed that his impairments were largely under his own volitional control"; the plaintiff "did not put forth an honest and sincere effort"; and "in fact [was] attempting to misrepresent himself for the purpose of secondary gain" (AR, p. 598). Dr. Maryman diagnosed malingering and a "cognitive disorder, NOS [i.e., not otherwise specified] (secondary to closed head injuries) – provisional but of uncertain degree of severity" (AR, p. 598). Dr. Maryman declined to complete the Medical source statement of ability to do work-related activities (mental) form because "[t]here was no reliable and credible evidence derived from this exam that could be used as basis for opinions on functional capacity" (AR, p. 600).

On May 4, 2006, the plaintiff was examined, at the request of the Commissioner, by certified clinical psychologist Julie Joseph-Fox, M.A. Ms. Joseph-Fox's narrative report is at AR, pp. 646-650.

9

On June 1, 2006, in light of all the available medical evidence, the non-examining state agency program psychologist, Jane Brake, Ph.D., completed the Mental RFC assessment, finding that the plaintiff is no more than "moderately" limited in any functional area (AR, pp. 668-669).

The plaintiff's primary contention is that the ALJ was obliged to give controlling weight to the medical opinion of treating clinical neuropsychologist, H. Edward Fouty, Ph.D. As noted above, on March 12, 2003, Dr. Fouty completed the Mental RFC questionnaire. Among other things, Dr. Fouty opined that the plaintiff would have "no useful ability to function" and "unable to meet competitive standards" in several functional areas that are pertinent to an ability to engage in work or work-like activities and that his condition would necessitate absences from work of more than four days per month (AR, pp. 543-547). It appears that acceptance of these limitations would render the plaintiff unemployable.

A treating source medical opinion is entitled to controlling weight under certain circumstances. However, the threshold issue in this case is whether Dr. Fouty's disabling opinions are medical opinions or rather implicit credibility findings based upon Dr. Fouty's uncritical acceptance of his patient's complaints relative to the severity of his symptoms. The magistrate judge concludes that Dr. Fouty's opinions are of the latter type. Dr. Fouty did not know, in the sense of an objective medical fact, that if properly motivated to work, the plaintiff would have "no useful ability to function," would be "unable to meet competitive standards," and would require absences beyond what is tolerable in competitive employment. Dr. Fouty's opinions were what the regulations characterize as "medical source opinions on issues reserved to the Commissioner" that are entitled to no "special significance," i.e., opinions that "you are disabled or unable to work" and that "would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e) and 416.927(e).

Alternatively, even if Dr. Fouty's opinions are deemed to be proper medical opinions they are entitled to controlling weight only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Dr. Fouty treated the plaintiff for a cognitive impairment. The magistrate judge concludes that Dr. Fouty's narrative findings in his Neuropsychological evaluation dated February 13, 2003, are not supported by and are inconsistent with his disabling opinions in his Mental RFC questionnaire dated March 12, 2003. Compare AR, pp. 543-547 and 549-554. Whereas the findings in the RFC questionnaire opine that the plaintiff is, in effect, unemployable at any job, the findings in the earlier evaluation indicate only that the plaintiff has experienced a "statistically significant" decline in his cognitive functioning in comparison to his "estimated premorbid ability level" (AR, p. 551). Dr. Fouty proceeds to identify the plaintiff's current percentile rank with respect to his attention/concentration (27th percentile), memory/learning (14th percentile), etc. The magistrate judge concludes that the plaintiff has failed to show that these modestly-low percentile rankings support Dr. Fouty's subsequent disabling opinions, which in any event are inconsistent with Dr. Maryman's diagnosis of malingering and Dr. Brake's completion of the mental RFC assessment in light of the record as a whole. In January of 2003, the plaintiff reported to Dr. Fouty that he had noticed "dramatic" improvement in his ability to develop and utilize compensatory strategies (AR, p. 555). Therefore, the ALJ was not required to give Dr. Fouty's disabling opinions controlling weight. Furthermore, the plaintiff has failed to show that Dr. Fouty's clinical findings are incompatible with the ALJ's mental RFC Finding No. 5 and/or the limitations contemplated by the controlling vocational hypothetical. Hence, any error was harmless.

**RECOMMENDATION**

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).